# Wheeling.

FEAMSTER *et al. v.* WITHROW, *trustee, et. al.*

Decided April 6, 1878.

1878.
Special Term.

| 12 | 611 |
| 34 | 676 |
| 12 | 611 |
| 48 | 701 |
| 12 | 611 |
| 62 | 461 |
| 12 | 611 |
| 66 | 352 |

1. When T. L. F. made his negotiable note with security or endorsers to a bank and the note became due and payable and was not paid at maturity, and suit was brought and judgment recovered by the bank, and S. W. N. F. one of the securities, after the recovery of such judgment made and delivered his negotiable note to said bank, with security or endorsers for the balance due on said judgment, including costs payable at one hundred and sixteen days after date; said last named note will not be considered as a satisfaction and extinguishment of said judgment debt, unless it is clearly proven that said last named note was by agreement of the bank accepted and received by it in absolute satisfaction and extinguishment of said judgment, and the *onus* of proving that the last named note was by express agreement accepted and received by the bank in absolute satisfaction and extinguishment of said judgment debt, rests upon the party so claiming it to have been so accepted and received. And especially is this so in a court of equity where in a cause said surety is seeking indemnity and reimbursement from his principal for alleged loss sustained by reason of his suretyship, it appears that said surety paid said last named negotiable note on its renewal in depreciated bank notes or Confederate treasury notes at their nominal value.

2. A case where a negotiable note with security was given and a receipt " in full " &c., was given to the bank the note is held not to have been received by the bank in absolute satisfaction and extinguishment of the judgment debt. (See opinion of the Court).

3. A security may pay the debt of his principal when it is due and payable without suit and recover the amount so paid by him with its interest from his principal as money paid for the use of his principal.

1878.
Special Term.

Feamster, *et al.*
v.
Withrow,
trustee, *et al.*

4. The surety is not entitled to recover from his principal a greater amount than he has paid for him, but he is entitled to interest on that amount from the date of its payment, and necessary costs.

5. If the surety pays the debt of his principal in depreciated currency, the general rule is that he can demand from his principal only the value of that currency at the time of the payment

6. It seems a sheriff or other officer who pays an execution in his hands for collection, without an assignment of the judgment on which it is founded or the debt, is not entitled to be subrogated to the lien of the creditor whose debt he has paid against other creditors having liens by judgment or otherwise.

An appeal from, and *supersedeas* to, a decree of the circuit court of Greenbrier county, rendered on the 23rd day of June, 1877, allowed upon the petition of Thomas L. Feamster and S. W. N. Feamster, in a cause in chancery, in which the said Thomas L. Feamster and S. W. N. Feamster, were plaintiffs, and James Withrow, trustee, and others were defendants.

Hon. Homer A. Holt, Judge of the eighth judicial circuit, rendered the decree complained of.

The facts sufficiently appear in the opinion of the Court.

*Samuel Price,* for appellants, cited the following authorities:

9 W. Va. 314; 3 Paige 117.

*Mathews & Mathews,* for appellees, Ludington and Dickson, relied on the following authorities:

Powell on App. Pro., pp. 287, 284, 285, 370, 371, 408, 409; 9 Heisk. 632; 5 Leigh 471; 8 Johns. 249; 2 Wend. 481; 8 Johns. 202; 3 East. 169; 2 B. & Ald. 51; 7 Wend. 502; 8 Wend. 452; 19 Wend. 423; 3 Denio 321; 6 Hill 324; 3 W. Va. 622; 1 Bur. 9; 1 Hill 516; 3 Wall. 37; 6 Cranch 253: 10 Pet. 532; 12 How. 225; 1 Sm. L. Cases (ed. 1852) 395; Sedgwick on Dama-

1878
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

321; Code of 1860 p. 345, §34; 21 How. 363-4; 6 Pet. 58; 8 W. Va. 503-4, 513-14; 21 Gratt. 556; 2 Gratt. 372; 3 Call 204; 4 Leigh 88; 5 Rob Pr., pp. 852, 848, 849, 864; 3 W. Va. 627; Fell's Law of Suretyship and Guarranty, pp. 251, 384, 385, 386, 387; 22 Gratt. 748; Virginia Law Journal, March; 2 Patt. & H. 11.

*John W. Harris* and *A. C. Snyder*, for appellees, Renick and Beard:

*First.* The appellee, Dickson, claims "that the court erred in deciding that the judgment of W. H. Dickson as to him has been satisfied and that he is no longer entitled to the benefit thereof."

It may be conceded that the legal title to said judgment is still in Dickson, and that he has never made any transfer of it, either in law, or in equity. This is, we believe, all he claims. It is proved in this case, that Dickson is utterly insolvent, and has been so for the past twelve or fifteen years. He is the principal in the note, executed by himself and G. A. Rader to John Snyder for the precise amount of said judgment, and in which he bound himself to pay said note as soon as he collected said judgment. He admits that he has never paid or had the possession of said note since he executed it; and it is proved beyond question, that he has received the full benefit of said judgment. What interest, then, has he in said judgment? Nothing but to collect, and immediately pay it over to the owner and holder of his said note, and take the latter up. The court has directed that the judgment shall be paid over to the owners and holders of said note, and that such payment shall be in full satisfaction thereof. Is not this precisely what Dickson would be legally and morally required to do, if he had collected the judgment? Is this, then, a matter of which he will be allowed to complain in a court of conscience? Was it not the duty of the court, from the facts shown in this case, to decree as it did? Or would it have been warranted in ordering the payment to Dick-

1878.
Special Term.

Feamster et al.
v.
Withrow
trustee, et al.

son, who is utterly insolvent, having no real interest in the fund, being simply a trustee of a dry trust, and permitting him to use his pleasure whether he applied it to its proper use, or spent it and allowed his surety, G. A. Rader, to pay off his note, or his creditors to lose the debt? It would be a blot upon equity jurisprudence if it had no power to interpose in such a case.

*Second.* The appellants claim that the said Dickson judgment has been satisfied; and that the appellees, Renick and Beard, have no title to it.

1. Has said judgment been satisfied? By this we must understand such a satisfaction as will release the debtor, Thomas L. Feamster, or discharge its lien on his lands. It is not suggested that any one has ever had any claim to said judgment, or any right to collect it, except W. H. Dickson, John Snyder and Andrew Beard; therefore if it has been satisfied it must have been paid to one of these persons. We shall consider them in the order they are named.

(*a*). There is no dispute as to the facts, so far as Dickson is concerned. He received the benefit of the amount of this judgment as a credit on the purchase of land from John Snyder, as hereinbefore shown, and he has received no other consideration or satisfaction of it whatever. There is not a scintilla of evidence to show that Thos. L. Feamster ever paid him one dollar on it, or that Dickson ever released Feamster or his property from its payment.

(*b*). Has it been paid to John Snyder? S. C. Ludington, Jos. A. Feamster and Samuel Tyree say, that Snyder told them that he had gotten his money; and that he said it was paid to him by T. L. Feamster, or that he got it out of the sale of said Feamster's property. But Snyder denies that he had any such conversations. He says, that "it (the debt) was settled with me; it was settled by Andrew Beard; he had a good many executions against me, and it is probable that it was settled in that way." And again, he says, "if it was not paid

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

by Beard it has never been paid me." This is all the proof there is tending to show that Feamster ever paid anything on this debt to Snyder, and it is entirely insufficient. All the benefit Snyder received from it, he got from Beard and from no one else.

(c). Was it, then, paid to Andrew Beard, or in any manner satisfied or discharged, while he held said Dickson note? He certainly had no authority to discharge it, except while he was the owner and holder of said note, which was from the 21st day of March, 1861, to the time he transferred said note to the appellees, Renick and Beard, in 1873.

It is not claimed that any money was ever paid by Feamster to Beard on this debt. The only effort seems to be to show that Beard, as sheriff, had levied some execution representing this debt, or some other debt, on the property of Feamster, and sold it either as sheriff, or otherwise, and paid off this debt from the proceeds of said sale, or retained a sum sufficient to pay it, which should have been applied to its payment, and thereby said judgment was satisfied. Let us consider the documentary evidence and see what foundation there is for this pretension.

On the 6th October, 1860, a trust deed, conveying all said Feamster's property, both real and personal, was duly recorded in Greenbrier county. Of course, then, no execution which was not in the hands of the sheriff prior to the recording of said deed, could be levied on any of said Feamster's property; consequently, the Dickson execution which, as we have seen, did not go into the hands of the sheriff until the 3d December, 1860, two months after, could not have been levied on any of said property. Beard's term of office, as sheriff, expired on the 1st day of January, 1861; and the said Dickson execution was returnable to the fourth Monday in January, 1861. The plaintiffs have proved that Beard made two sales of the property of Feamster, the one in the fall of 1860, and the other in

1878.
Special Term,

Feamster et al.
v.
Withrow,
trustee, et al.

the spring of 1861. It is very certain then, that neither of these sales was made while the said Dickson execution was in force in the hands of Beard; the first was made before it issued, and the second after the return day. And in addition to the fact that Feamster had no property on which it could have been levied, the execution is here to show that no levy appears upon it, and other executions which had priority over it, were returned " no property found." This we think, is ample to show that Beard did not collect any money on said Dickson execution, or levy it on Feamster's property at any time as sheriff, nor could he have made himself liable for its payment as sheriff upon these facts, and he had no right to collect it in any other capacity.

On the 21st March, 1861, after the return day of said execution, and after his term as sheriff had expired, John Snyder transferred to Beard the Dickson note. This was receipted for by him, in his individual capacity. Before this he had no claim whatever to said Dickson judgment or execution. Was it paid to him after this? The appellants contend that while he was sheriff he sold about $4,000.00 worth of Feamster's property, and that the evidence filed in this cause does not show what application he made of about the one-half of the proceeds of said property; and therefore they conclude that he applied it to the payment of said judgment. It is needless to repeat what we have already shown in reply to this. When an officer returns an execution against an insolvent debtor, who has conveyed all his property in trust, "no property found," the law presumes that the sheriff has applied all the funds in his hands to the payment of prior executions, and that there is nothing in his hands to satisfy a junior execution which came into his hands a month after the one so returned, the presumption is just the reverse of that claimed by the appellants. If they attempt to show payment of the Dickson debt to Beard, they must do it by proof, and not by forced presumptions. Let us next consider the proof of payment to Beard.

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

Thomas L. Feamster, the debtor, is the only witness who attempts to say anything on this subject. It might be sufficient to object to and exclude his evidence as incompetent against A. Beard, or those claiming under him, the said Beard being dead. But his evidence, instead of showing any payment, tends strongly to prove that there was in fact no payment of said debt. When asked the direct question, whether he had ever paid any money on said debt, to either Beard, Snyder or Dickson, he says, "I have no recollection of ever paying any money on that execution." And in reply to the question, "In what way do you think it was paid?" he says, "I cannot say; my impression is that it was paid, but I cannot now remember the manner of its payment." In the former part of his deposition, when he says that he told Beard he thought on a fair settlement he, (Beard), would owe some money, to which he says Beard replied, "that to include a little balance I owed him individually, there was not much between us," it is evident neither Beard nor Feamster had any reference to this Dickson judgment; because Feamster just before says, that Beard never claimed said judgment, and that he "never heard him mention it at any time." The only other witness who says anything on this subject, is John Snyder, and he says, that in various conversations had with Beard after the institution of this suit, he (Beard), claimed that this debt was his, and that Feamster had never paid him. This is all the evidence adduced to prove payment to Beard, and it is positively insufficient to raise even a suspicion that there was any such payment. Therefore we confidently conclude there is no evidence in this case to show payment to either Dickson, Snyder or Beard. Have then the appellees, Renick and Beard, any right or title to said debt?

2. James Withrow, in his deposition says, that he saw, "according to his recollection, a general assignment of all evidences of debts due to him, (Beard) to Renick and Beard as indemnity." We do not deem it necessary

1878.
Special Term.

Feamster *et al.*
v
Withrow,
trustee, *et al.*

to rely on the testimony of Renick and Beard, as their evidence is excepted to, nor do we regard the assignment filed as exhibit "No. 3" of the petition, as essential to make out the title of these appellees to said debt. The testimony of James Withrow, and the production of the Dickson-Rader note, in this case, fully establishes their right to said debt. The possession of the note alone is *prima facie* evidence of ownership, and as there is no one claiming said debt, except these appellees and W. H. Dickson, whose pretensions we have already disposed of, this evidence of title is conclusive. It is not for the appellants here to question the title of these appellees to said debt. When they fail to satisfy the court that the debt is paid, their mission is ended. The representative of Andrew Beard was before the circuit court, and he made no claim to this debt. All the parties who have ever had any claim to this debt, were before said court, and none of them, except these appellees and Dickson, made any claim to it. It is submitted therefore, that the appellees, Renick and Beard, are entitled to said debt, and as to them, the decree of the circuit court should be affirmed.

HAYMOND, JUDGE, delivered the opinion of the Court:

This is a cause in equity. It has heretofore been before this Court, and is reported in 9th W. Va. R. 296. Reference to the case as heretofore reported is here made for a full statement up to its decision by this Court as heretofore made. When the case was formerly before this Court, on its decision this Court made and entered the following decree, viz:

"The Court having maturely considered the transcript of the record aforesaid, and the arguments of counsel thereon, is of opinion, for reasons stated in writing and filed with the record, that there is error in said decree. It is therefore adjudged, ordered and decreed, that the decree rendered in this cause by the circuit court of the

1878.
Special Term.
——————
Feamster *et al.*
v.
Withrow,
trustee, *et al.*

county of Greenbrier, on the 30th day of November, 1872, be reversed and annulled, and that the appellees, S. W. N. Feamster and Thomas L. Feamster, do pay to the appellants their costs about the prosecution of their appeal in this court in this behalf expended. And this court proceeding to render such decree in this cause as the said circuit court of the county of Greenbrier should have rendered, it is adjudged, ordered and decreed, that this cause be remanded to the circuit court of said county of Greenbrier, with instructions to recommit so much of the supplemental report of commissioner Walker as is embraced by the second statement thereof, of the accounts between S. W. N. Feamster and Thomas L. Feamster, for further inquiry and report as to certain matters of said account therein in the written opinion of this Court mentioned, according to the principles settled and directions and privileges given in said opinion, and in doing so such commissioner shall also ascertain and report for the action of the court whether the said S. W. N. Feamster, on the 19th day of January, 1861, or thereabouts, paid and discharged the debt due the Bank of Virginia, at Union, in the proceedings in this cause, and the deed of trust in the bill mentioned, and if so, how he paid and discharged the same, with a view to a final proper decree as to the same ; and as to the Dickson judgment in the proceedings in said decree mentioned, whether the same has been paid, and if not, to whom it is due; and also the legal priorities of the debts as judgment or trust liens against the lands in the deed of trust made by Thomas L. Feamster to James Withrow on the 2d day of October, 1860, filed with the plaintiffs' bill, mentioned ; and for such further proceedings in said circuit court therein to be had as may be in accordance with the principles and rules governing courts of equity, which is ordered to be certified to the circuit court of Greenbrier county."

This decree or mandate being certified according to law to the circuit court of Greenbrier county, where the

1878.
Special Term.
——————
Feamster *et al.*
v.
Withrow,
trustee, *et al.*

cause was commenced and decided, it was entered of record in that court according to law. Afterwards, on the 8th day of November, 1876, the said circuit court made and entered this decree in the cause, viz:

" This day came James H. Renick and S. C. Beard, by their counsel, and by leave of the court filed their petition; and on their motion, the plaintiffs amended their bill by making said petitioners and James Knight, administrator of A. Beard, deceased, and John Snyder defendants in this cause, and process is awarded against said administrator and Snyder. And this cause came on this, the 8th day of November, 1876, to be again heard upon the papers formerly read, the mandate of the Court of Appeals of this State remanding this cause to this court for further proceedings to be had therein, and was argued by counsel. Upon consideration whereof, it is adjudged, ordered and decreed, that so much of the supplemental report of commissioner Walker as is embraced in the second statement thereof of the accounts between S. W. N. Feamster and Thomas L. Feamster be recommitted to J. M. McWhorter, one of the commissioners of this court, for further inquiry and report as to certain matters of said account in the written opinion of the Court of Appeals mentioned, according to the principles settled and directions and privileges given in said opinion, and in doing so said commissioner shall also ascertain and report for the action of this court whether the said S. W. N. Feamster, on the 19th day of January, 1861, or thereabouts, paid and discharged the debt due the Bank of Virginia, at Union, in the proceedings and in the deed of trust in this cause mentioned, and if so, how he paid and discharged the same; and the said commissioner, as to the Dickson judgment in the proceedings in this cause mentioned, is directed to ascertain and report whether the same has been paid, and if not, to whom it is due; and also to report the legal priorities of the debts as judgment or trust liens against the lands in the deed of trust made by Thomas L. Feamster

1878.
Special Term.
Feamster et al.
v.
Withrow,
trustee, et al.

to James Withrow, on the 2d day of October, 1860; and the said commissioner is also directed to inquire into, ascertain and report any and all matters called for and required by said opinion, and to report any matter to be specially stated by himself, deemed pertinent or required by any party to this cause, to make said report in conformity with said opinion, and return the same to the next term of this court. But before executing this decree, the said commissioner shall give notice for at least ten days, to all the parties to this suit, or to their attorneys of record, of the time and place, when and where he will do so."

The petition and answer of James H. Renick and Samuel C. Beard, referred to in the last named decree, is as follows, viz:

" *The petition and answer of James H. Renick and Samuel C. Beard to a bill filed in the Circuit Court of Greenbrier County by Thomas L. Feamster and others* v. *James Withrow, trustee, and others:*

" Petitioners respectfully show—

"1st. That they and others were the sureties of Andrew Beard, late sheriff of Greenbrier county, upon his official bond as such sheriff, for the term of two years, commencing on the 1st day of January, 1859, as will more fully appear from an authenticated copy of said bond herewith filed as an exhibit, marked 'No. 1.'

" 2d. That said Beard, as such sheriff during the term aforesaid, by negligence and inefficiency, became liable for large sums of money to sundry persons, and without discharging the same, became wholly insolvent, in consequence of which your petitioners, his sureties as aforesaid, were compelled to pay and did pay as such sureties: to one Graham about $2,000.00, and to various other persons large sums amounting to about $3,000.00; that at the October term, 1875, of this court, in a suit in which Estill & Eakle *et al.* are plaintiffs, and said Beard as administrator of Thomas M. McClintic, deceased, your

1878.
Special Term.

[Feamster et al.
v.
Withrow,
trustee, et al.

petitioners and others are defendants, a decree was rendered against your petitioners and others, as the sureties of said Beard, who, as sheriff, was administrator of said McClintic, for the sum of $3,365.88, with interest from the 1st day of November, 1875, until paid, and the costs of said suit, which sum still remains as a liability against petitioners, as will more fully appear from a copy of said decree herewith filed as an exhibit marked 'No. 2.'

"3d. That said Beard, to repay your petitioners for the money paid by them for him as aforesaid, and to indemnify them as far as he could for such sums they might thereafter be compelled to pay for him as sureties on his official bond as aforesaid, on the 2d day of September, 1873, executed and delivered to petitioners a written assignment of all the bonds, executions and other evidences of debt owned by or due to said Beard; that said written assignment has been lost or mislaid, and cannot be found, but a substantial copy thereof, dated on the 2d day of September, 1873, is herewith filed as an exhibit marked 'No. 3.'

"4th. That among the evidences of debt then held by said Beard and assigned to petitioners as aforesaid was an execution from the county court of Greenbrier county, dated November 30th, 1860, in the name of William H. Dickson v. Thomas L. Feamster, S. C. Ludington, D. H. Stalnaker and C. A. Stuart, for the sum of $1,960.00, to be discharged by the payment of $980.00, with interest thereon from the 27th day of May, 1860, till paid, and $3.83 costs, as shown by said execution herewith filed as an exhibit, marked ' No. 4.'

" 5th. That at the March term, 1860, of said county court, a judgment was rendered by said court in favor of said Dickson v. said Thomas L. Feamster, S. C. Ludington and D. H. Stalnaker for $904.56, with interest thereon from September 27th, 1859, till paid, and costs, $10.64, which was duly docketed as a judgment lien in the clerk's office of the said county, on the — day of —, 1860, as is fully shown by a copy thereof filed with the answer of said Dickson in this suit.

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

" 6th. That upon said judgment an execution issued, was placed in the hands of the sheriff for collection, and a forthcoming bond was taken by him, with said C. A. Stuart as surety, for the amount thereof, and duly returned to the clerk's office of said court, and on the 27th day of November, 1860, said court awarded execution on said bond for the aforesaid sum of $1,960.00 and costs, to be discharged as aforesaid, as fully shown by a certified copy of said judgment and award of execution herewith filed as exhibit marked ' No. 5;' and that upon this order the aforesaid execution marked exhibit ' No. 4' was issued and placed in the hands of said Andrew Beard, then sheriff as aforesaid, on the 3d day of December, 1860, for collection, as shown by an endorsement thereon in the handwriting of said Beard.

"7th. That the defendant, John Snyder, sold to the said Dickson a tract of land for which the said Dickson was indebted to him for a large sum, to-wit: $5,000.00; that on or about the 1st day of October, 1860, the said Dickson, in part payment of said debt, transferred and sold to said Snyder the benefit of said judgment, then amounting to the sum of $969.87, and the said Snyder then and there gave the said Dickson credit on said debt for said sum of $969.87, the full amount of the judgment aforesaid as of the 1st October, 1860; that about the same time and perhaps at the time of the transfer aforesaid, the said Dickson and one G. A. Rader, executed and delivered to said Snyder their due bill or note dated October 1, 1860, for $969.87, to be paid when the money could be made on the aforesaid judgment, with interest from date, a copy of said due bill is filed with the deposition of said Snyder taken in this suit, marked Exhibit 'A' of said deposition.

" 8th. That the said Andrew Beard, as sheriff as aforesaid had in his hands for collection a number of executions against said Snyder for a large amount of money and that some time after the 3d day of December, 1860, and while the said execution of Dickson *v.* Feamster

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

and others, was in his hands, the said Beard agreed to take said execution in part payment of the execution due from said Snyder as aforesaid, and thereupon the said Snyder transferred to said Beard the benefit of said execution on Feamster and others, and at the same time delivered to him, the said Beard, the aforesaid due bill of said Dickson and Rader ; the said due bill and execution being evidence of one and the same debt. Thus the said Beard became and was the legal and proper owner of the judgment and execution aforesaid.

"9th. That the aforesaid C. A. Stuart is a non-resident of this State, and the said G. A. Rader and D. H. Stalnaker, each died many years since ; that on the —— day of April, 1875, the said Andrew Beard departed this life intestate and insolvent, and his estate by an order of the clerk of the county court of Greenbrier county, has been committed to James Knight, sheriff of said county, for administration.

"10th. That no part of said judgment and execution has ever been paid by either of the debtors therein to the said Dickson, the said Snyder, the said Beard, as sheriff or otherwise, nor has any part of it been paid to the administrator of said Beard or to petitioners, and the whole thereof now remains due to petitioners, and it is a lien upon the lands of said Thomas L. Feamster in the bill mentioned, having priority over all other liens on said lands.

"Petitioners therefore pray that the plaintiffs may be required to amend their bill and make them, the said Snyder and said James Knight, as administrator of said Andrew Beard, deceased, parties defendants thereto ; that this petition may be filed in said suit, and when filed may be taken and treated as the answer, and, if deemed proper, also the cross-bill of petitioners to said bill ; that the judgment aforesaid may be enforced against the land of the plaintiff, F. L. Feamster, in the bill mentioned ; and that they may have such other and general relief as they may be entitled to in the premises."

*Exhibit "No. 3" of Petition.*

1878.
· Special Term.

Feamster *et al.*
v.
Withrow,
trustee,. *et al.*

"In addition to the claims assigned by me to Jas. H. Renick and Dr. Beard against Mrs. Thomas McClintic and the Misses Estte, now in the hand of Mathews & Mathews for collection, I have on several former occasions assigned to said parties as my sheriff-securities all my bonds, executions and other evidences of debt, to be and have collected and applied through Mr. Jas. Withrow for their benefit.

"A. BEARD,
·*"September* 2*d,* 1873: .*"Per Jas. H. Renick."*

By exhibit No. 5 mentioned in said petition and answer, it appears that at a circuit court held for the county of Greenbrier, on the 27th day of November, 1860 William H. Dickson obtained a judgment on a delivery bond against the said Thomas L. Feamster, Samuel C. Ludington, Daniel H. Stalnaker and C. A. Stuart, for $1,960.00 to be discharged by the payment of $980.00 with legal interest thereon from the 27th day of May, 1860, until paid and the costs.

By exhibit No. 4 filed with said petition, it appears that on the 30th day of November, 1860, a writ of *fi. fa.* directed to the sheriff of Greenbrier county, was duly issued from the clerk's office of said circuit court upon said last named judgment, in favor of said Dickson against said Thomas L. Feamster, Samuel C. Ludington, D. H. Stalnaker and C. A. Stuart, for the said sum of $1,960.00 and $3.83 costs, upon which execution the clerk endorsed " this execution to be discharged by the payment of $980.00 with interest thereon to be computed at the rate of six per cent. per annum from the 27th day of May, 1860, till paid and within mentioned costs ; "no security to be taken." It seems this execution was received by Andrew Beard, sheriff of said county of Greenbrier, on the 3d day of December, 1860.

William H. Dickson filed his answer to said petition and answer of Renick and others in which he

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

calls the petition, &c. a cross-bill; which answer is as follows:

"*To the Hon. Homer A. Holt, Judge of the said Court:*

"The separate answer of William H. Dickson to the cross-bill filed in the above entitled cause by James H. Renick and S. C. Beard:

"This respondent, for answer to said cross-bill, says that it is not true as therein stated that he ever assigned or transferred to John Snyder at any time or in any way the benefit of an execution or of the judgment on which said execution issued in his favor against Thomas L. Feamster, S. C. Ludington and D. H. Stalnaker for $904.56, with interest thereon from September 27, 1859, till paid, and $10.64 costs, in part payment of land bought by him of said Snyder, or for any other cause or consideration whatever; that it is not true that the said Snyder ever gave him credit on a purchase of land or on any other debt for said execution or judgment; and that it is not true that the said Snyder ever did or could tranfer to Andrew Beard the benefit of said judgment for $904.56, for he never owned it or had any title to it.

"Further this respondent denies that the said Beard ever was the owner, or that he ever in his lifetime claimed or pretended to be the owner, of said judgment, or that he ever assigned or pretended or attempted to assign it to his said sureties.

"And he denies further that the written assignment, a pretended copy of which is filed with said cross-bill, was every executed by said Beard, and if it were, he denies that it was or could have been intended to apply to and embrace said judgment; on the contrary, this respondent avers that the said Beard when living knew all about the assertion and prosecution of this respondent's claim to said judgment made in this suit; that he was present when nearly all the evidence bearing upon said claim was taken; that he not only did not then or at any time set up any right or claim on his own part, but on the con-

1873.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

trary, while admitting that the said execution came into his hands as sheriff, expressly stated that he 'knew nothing about it,' and the claim now asserted in said cross-bill is but an after-thought trumped up on the part of said sureties, who appear to be on a raid to all what they can capture, and has no foundation, in fact, except that the said execution was received by said Beard as sheriff; that he failed to enforce and collect as it was his duty to have done, and thereby made himself and his securities liable therefor. This respondent here refers to his petition and answer already filed in this cause, and asks that the same be taken and read in connection with and as a part of this answer; and having fully answered, he prays hence to be dismissed, &c.,,

The answer of John Snyder is in these words, viz:

"*The answer of John Snyder to a bill exhibited against him and others in the Circuit Court of Greenbrier County, by Thomas L. Feamster and others.*

"This respondent, for answer to said bill, says that he knows very little about the matters in said bill contained except so far as they involve the judgment and execution in the name of W. H. Dickson, which are particularly described and exhibited in the petition of J. H. Renick and others filed in this suit. Prior to October, 1860, respondent sold to the defendant, W. H. Dickson, a tract of land for the sum of $9,000.00. It had been ascertained that said Dickson would be unable to pay for said land, and a suit had been instituted against him for the balance of purchase money; but before the hearing of said suit, Mrs. E. McClung, the mother of the wife of said Dickson, agreed to aid said Dickson in paying for said land, and with this view she sent her son, J. Griffin Rader, to settle the balance due on said land. On or about the 1st of October, 1860, the said Rader acting for the said Mrs. McClung and said Dickson, made a settlement with respondent in the presence of said Dickson, and as part payment of said balance the said judgment, then

## 628

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

amounting to about $969.87, was transferred to this respondent, and as security and a guaranty for the payment of said judgment Green A. Rader and the said Dickson at the same time delivered to respondent the note or bond found on page — of the printed record in this suit. Sometime after this transfer of said judgment, respondent, in order to satisfy Andrew Beard, who as sheriff then held in his hands a number of executions against him in favor of different persons, agreed that said Beard (who then had an execution in his hands on a delivery bond which had been taken on said Dickson judgment), should apply the proceeds thereof when collected to the payment of said executions against respondent. Among said executions are the following which were found in the papers of said Beard after his death and shown to respondent: One in favor of Wood, Weisergre & Co. for $221.29, with interest from January 24, 1859, and $2.99 costs; one in favor of John Dooley for $73.95, with interest from May 14, 1857, and $7.31 costs; one in favor of Wilson & Burns for $272.84, with interest from November 30, 1857, and $8.64 costs; one in favor of Wordibaugh, Smith & Co. for $88.70, with interest from January 24, 1859, and $2.83 costs; one in favor of Goodhowe, Tucker & Smith, for $362.56, with interest from January 24, 1859, and $2.83 costs; one in favor of Pare & Wanen, for $7.37 costs; one in favor of Putney & Watts, for $281,43, with interest thereon from August 13, 1859, until paid, and $3.41 costs; one in favor of Thomas Pare, for $123.72, with interest from March 23, 1857, and $11.67 costs; one in favor of George Livesay for $128.50, with interest from January 15, 1859, and $4.07 costs; one in favor of Wilson & Burns, for $177.43, with interest from July 26, 1858, and $2.83 costs; one in favor of Bell & Bright, for $185.92, with interest from January 22, 1859, and $2.99 costs; and one in favor of James Jarrett, Jr., for $581.54, with interest from July 1, 1860, and $4.57.

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

"In compliance with the agreement aforesaid, respondent, at the time or subsequently thereto, delivered to said Beard the note or bond aforesaid, and took his receipt for the same which receipt is filed as exhibit — with the deposition of S. W. N. Feamster; the receipt referred to here is filed with the deposition of John Snyder in this case. Respondent and said Beard had partial settlements at different times, but respondent does not recollect that said Dickson execution was ever settled, and he can find no evidence of such settlement among his memoranda and papers although he finds memoranda of other settlements. He verily believes that said execution was never settled or accounted for by Beard to him. Said Beard claimed that he had never collected the same, and held said executions above mentioned against respondent until he could collect this one, when as he said a settlement could be made, and if after giving him, Beard, credit for the amount of the balance on the executions above mentioned there should remain anything over, it should be settled. Respondent has heretofore been and still is of opinion that the executions held by Beard, against him as aforesaid, will be sufficient to cover said Dickson's execution, and hence he has given the matter no consideration, and does not now believe that any part of it will be coming to him on a full settlement, but if it should appear on such settlement that he is entitled to anything he desires that it shall be paid him. Certain it is that neither Dickson, T. L. Feamster or Beard ever accounted to or paid him any part of said execution or note, except as herein stated.

A number of depositions were taken before the commissioner, and papers and copies of papers filed before him as evidence by the parties, and the commissioner made his report, which is as follows, viz:

"*To Hon. Homer A. Holt, Judge of the Circuit Court of Greenbrier County :*

"On the 8th day of November, 1876, a decree was en-

1878.
Special Term.
_____
Feamster et al.
v.
Withrow,
trustee, et al.

tered in the cause of Thomas L. Feamster, *et al.*, *v.* James Withrow, trustee, *et al.*, recommitting the said cause to your commissioner for further inquiry; and report as to certain matters in the account heretofore taken in said cause, according to the principles settled and directions and privileges given in the opinion of the Court of Appeals. Your commissioner is required to report whether S. W. N. Feamster, on the 19th day of January, 1861, or thereabouts, paid and discharged the debt due the Bank of Virginia, at Union, in the proceedings and in the deed of trust in this case mentioned, and if so, how he paid and discharged the same. Your commissioner is directed to ascertain and report whether the Dickson debt has been paid or not, and if not, to whom it is due. He is also directed to report the legal priorities of the debts as judgments or trust liens against the lands in the deed of trust made by Thos. L. Feamster to James Withrow on the 2d day of October, 1860; and further to inquire into, ascertain and report any and all matters called for and required by the said opinion of the court, and to report any matter deemed pertinent by himself to be stated, or that might be required by any party to this cause. A certified copy of the decree is returned herewith marked '20.' (See decree of 8th November, 1876). Your commissioner gave the parties, or their attorneys, notice that he had fixed upon the 22d day of February last, at his office, as the time and place for taking evidence, stating and reporting upon the matters required in the said decree. On the day fixed, the parties appeared and commenced taking depositions, and the taking thereof was adjourned from time to time to suit the convenience of the parties, up to the 14th of May, 1877, when they were closed.

" Several papers are filed by consent of counsel, endorsed to be used as evidence, but subject to exceptions for irrelevancy, &c., but are treated as the depositions of the several parties who made the statements. ·

"The depositions taken with the statements filed, are

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

returned herewith. Your commissioner has endeavored to collate the evidence on each subject to be reported upon, and the subjects are taken up in the order named in the decree referring this cause. The first is whether S. W. N. Feamster, on or about the 19th day of January, 1861, paid and discharged the debt due the Bank of Virginia, at Union, mentioned in the proceedings and in the trust deed from Thomas L. Feamster, and if so, how was it paid. There is an admission endorsed on the statement heretofore filed in this cause, purporting to be a settlement of the debt of the bank at Union, with S. W. N. Feamster, ' that at the date of said paper, M. McDaniel was cashier of the Bank of Virginia, at Union, and that said paper is in his handwriting.' (See paper marked 'M. McD.') There are also two statements made by Thomas A. Bledsoe, cashier of the National Valley Bank of Staunton, in whose possession the books of the former bank at Union seem to be, which it is agreed by written endorsement thereon may be read as evidence. (See papers 'A' and 'B.') This is about all the additional evidence, that has been filed as to the payment of said debt. The said debt has been sued on and judgment obtained against the makers and endorsers of the note, and the settlement of S. W. N. Feamster with McDaniel, is in satisfaction of the judgment, and evidently would have operated as a bar to its execution. Whether it was such a payment as would entitle S. W. N. Feamster, the surety, to recover the full amount thereof against Thos. L. Feamster, the principal, or whether he should be reimbursed to the extent he was damnified only, is a matter for the court to determine on the evidence. Two statements are made, one for either aspect of the case. The debt or judgment was paid by S. W. N. Feamster by his executing his note, with endorsers (after payment $750.00), for the remainder which was renewed from time to time, with occasional small curtailments, until December 18, 1862, when it was fully paid off. As to whether under the decision of the Supreme Court of Ap-

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

peals any other points of controversy than those directed to be referred can be investigated or not, is for your commissioner to determine, but there are some matters in dispute, or were, and are still, unless settled by the Supreme Court, that would change the accounts somewhat between the parties. There is a difference as to the amount received by S. W. N. Feamster on the price of slaves of Thomas L. Feamster. In the former account S. W. N. Feamster is charged with $2,500.00, and now he files some further evidence to show that he should be charged with but $2,212.97. (See papers ' S. W. N. F.') Calculation is in both statements made as between Thomas L. Feamster and S. W. N. Feamster, showing what is due, one charging the $2,500.00, and the other charging the $2,212.97. In regard to the Dickson debt, no additional evidence to that in the. original record before the Court of Appeals has been taken on the part of Dickson. Dickson says he has no recollection of ever having assigned or transferred his judgment against T. L. Feamster to any one, nor did he authorize or empower Griffin Rader to dispose of, or transfer it, nor does he know of its having been paid. Wm. H. Dickson married a daughter of Mrs. McClung, and Mrs. McClung was the mother of J. Griffin and Green A. Rader. In 1859, John Snyder sold to Wm. H. Dickson, a farm for $——, and in 1860 a final settlement for the purchase money was made between J. G. Rader and John Snyder—Wm. H. Dickson being present. J. G. Rader at the time made a memorandum in a little book of the several items that entered into the settlement, among which is ' execution on Feamster $969.87.' At the same time G. A. Rader and Wm. H. Dickson executed to John Snyder their due bill for $969.87, payable as soon as the money could be made on the judgment of Wm. H. Dickson v. Thos. L. Feamster and others, with interest from date of note, October 1, 1860. J. G. Rader says that apart from the memorandum made in his book he has no recollection of the Feamster execution entering

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

into the settlement with Snyder. Snyder says Dickson after the settlement asked him how the settlement was made, and he, Snyder, showed him a memorandum he had taken of the settlement (see paper ' 2') which included ' execution of Feamster,' and he made no objection. Snyder claims no part of the judgment; says that so far as he is concerned it has been paid, and thinks that Andrew Beard; the sheriff, settled it with him by executions that were in his hands against Snyder, which appears probable, as the note executed by G. A. Rader and Wm. H. Dickson to Snyder was given up to A. Beard. (See his receipt marked '20.') While this note cannot be construed into an assignment of the Feamster judgment, it very much appears as if it were so treated by the parties after its execution. John Snyder filed his answer to the plaintiffs' bill and petition of J. H. Renick and S. C. Beard, in which he files as exhibits sundry executions which were probably in the hands of A. Beard about the date of the delivery of the note to Beard, which executions against Snyder are largely in excess of the note aforesaid. Further than this Snyder says Beard never paid him a dollar for any claims that he had against Beard whilst sheriff, as all such claims were settled on executions Beard had for collection against Snyder. From all the evidence, it is to your commissioner's mind pretty clearly shown that Dickson received the benefit of his (Feamster) judgment in the purchase price of land bought of Snyder, and also that Snyder received the benefit of it from Beard, to whom he transferred the note for the amount of the execution as an offset to executions Beard held as sheriff against him. As to whether the said execution was ever paid by Feamster to Beard, is a question not readily solved. Thos. L. Feamster states that his recollection is that it was settled in some way, but cannot state how, but that Andrew Beard did not claim it of him. S. W. N. Feamster states that Dickson told him it was paid, but as we have already seen, he received it in a settlement with Snyder, and Sny-

1878.
Special Term.

Feamster *et al.*
v.
Withr
trustee, *et al.*
der settled it with A. Beard, and that brings us back to the old difficulty again. Beard, the sheriff, levied on a large amount of property of Thos. L. Feamster, which was sold principally in the fall of 1860, the exact date is not fixed, but most likely in October of that year from the evidence. This sale must have amounted to $3,000.00, or upwards. In March, 1861, it appears a second sale occurred, which amounted as taken from a memoranda found with Beard's papers to $866.25.

"The execution of Dickson did not go into the hands of A. Beard for collection until December 3, 1860, so that it could not have been one of the executions levied, and upon which the property was sold October, 1860. The petitioners, J. H. Renick and S. C. Beard, filed copies of executions which were in the hands of A. Beard, sheriff, against Thomas L. Feamster with the commissioner, which for convenience of reference are numbered from one to nine inclusive, with a view of showing that at the time of the sale there was sufficient in his hands to cover the proceeds of the sale of Feamster's property. Since closing this report they have filed another execution which is marked 'ten,' which was delivered to the sheriff same date of the delivery of the Dickson execution, and is returned 'no property found.' Of these, numbers one, two and eight are the only ones which could have been levied, and the property sold under, and they amount as of October, 1860, to about the sum of $2,050.00; then there is found among Beard's papers, which were probably in his hands at that date, taxes, fee bills, &c., amounting to $80.49 more. (See paper 'twelve,' in which is found the memorandum of the sale referred to above, and a note from Feamster to Beard on which was due $200.00 or a little more. No. 3 did not issue until November 30, 1860, and it is the debt paid by S. W. N. Feamster, and for which he has credit, and a corresponding charge against T. L. Feamster's farm secured by deed of trust. No. 4 went into the sheriff's hands October 20, 1860, and is returned 'no property found

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

liable to distress.' No. 5 went into the sheriff's hands also October 20, 1860, but no return. No. 6 placed in his hands of same date ; no return. No. 7 same date, and is the debt settled with bank at Union by S. W. N. Feamster. No. 9 issued November 30, 1860, returned 'not made.' So that if the executions here filed as being in the hands of Beard at the date of sale were all that were against him, there must have been some $1,500.00 or more of the proceeds of the two sales to have applied to executions that came into his (the sheriff's) hands after the levy was made. Nos. 5 and 6 are, your commissioner thinks, the debts that were paid by M. Arbuckle in 1863. There is no question as to No. 5 being one. (See Thomas Mathews's deposition). No settlement between Andrew Beard and Thomas L. Feamster appears to have been made after the sales of Feamster's property. Feamster states no settlement was ever made. (See page — of deposition). The matter is in doubt as to whether Feamster ever paid the Dickson debt to Beard or not, or whether upon a full settlement between them it would not have been paid.

"As to the title of James H. Renick and S. C. Beard, to the judgment of Dickson v. Feamster, it can only arise in case it should be determined that Feamster had not settled it with Beard, and on the grounds that A. Beard had paid Snyder for it, and Snyder had assigned or transferred it to Beard, who had thus been substituted to the rights of the original judgment creditor. They claim it under the provisions of exhibit 'No. 3' filed with their petition, by which they say A. Beard turned over all his claims and debts to secure them as his securities. Mr. Renick says that there were only two written assignments to them from A. Beard. One he calls the Estill assignment, and the assignment 'A. B.' filed with deposition, and if exhibit 'No. 3' is construed to be an assignment, from what he states in his deposition, it is the third written assignment.

"In regard to the Ludington debt. In addition to former

1878.
Special Term.

Feamster el al.
v.
Withrow,
trustee, et al.

evidence in this cause, Mr. Ludington states that he bought the bank notes and checks on the lowest terms he could, on purpose to pay off the judgment the bank had against him and others, and that he paid them as he could an amount sufficient to pay the debt, as the cashier, after the first payment of about $200.00, refused to take further payments until a sufficient sum was raised to pay it off.

· " As to the payment in Confederate money on the several debts of Thomas L. Feamster by S. W. N. Feamster, the $400.00 paid in 1862, on the Kent, Payne & Co. debt, is shown to have been in Confederate money, by the statement of W. H. Montgomery, admitted as evidence and filed.

" From the deposition of Thomas Mathews, or statement filed to have the effect and force of a deposition subject to exceptions, it would not be a violent presumption to treat all payments made on debts in this county after June, 1862, as having been made in Confederate money, or a like depreciated currency, where there is no evidence to the contrary ; and your commissioner so calculated it in the accounts, with the exception of one payment on the bank debt at Union, made January 24, 1862, which is scaled, by which the payment is reduced $51.00 ; and should it be held that the evidence did not justify this scaling, the sum, with its interest to June 1, 1877, can be added to the amount found due S. W. N. Feamster.   With the evidence before the Court of Appeals, the conclusion seems to be arrived at by said Court, that the settlement of M. McDaniel and S. W. N. Feamster, was not a payment of the bank debt at Union (see page — of opinion); but as the case was to be referred, further evidence was to be permitted on behalf of S. W. N. Feamster, as to its payment.   The additional evidence, is confirming statement of M. McDaniel to be correct, and other statements of Bledsoe from bank books filed as evidence.

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

" All which is respectfully submitted this 18th day of May, 1877.

" J. M. McWHORTER.
" *Commissioner."*

| | | |
|---|---:|---:|
| Statement of debt due S. W. N. Feamster, as fixed by decree of November 30, 1872, after modification of commissioner Walker's report, . . . . . . . | $6,180 50 | |
| | | $6,180 50 |
| Items of interest in above amount, as shown by Walker's report, as follows : | | |
| Interest on $3,502.62, balance found due as of June 1, 1863, to November 25, 1871. . . | $1,782 83 | |
| Interest on $388.08 paid M. Rungers' executor. . . . . . . . | 73 34 | |
| Interest on $400.00 paid on Kent, P. & Co. debt, September 26, 1868. . . . . . | 76 00 | |
| Interest on $175.00 paid on same debt, September 19, 1867. . . . . . . | 44 80 | |
| Interest on $147.00 paid on same debt, November 8, 1867. . . . . . . . | 35 84 | |
| Interest on $445.66 paid on same debt, June 22, 1870. . . . . . . . | 37 88 | |
| | $2,050 69 | |
| Deduct principal and interest paid by Thos. L. Feamster. . . . . . | 496 40 | |
| | | $1,554 29 |
| Leaves as principal. . . . . . | | $4,626 27 |
| Interest on $4,626.27, principal in above amount, from November 25, 1871, to June 1, 1877. . . . . . . . . | $1,531 29 | |
| Add amount found due by decree. . . | 6,180 50 | |
| Amount found due, with interest on principal to June 1, 1877. . . . . . | $7,711 79 | |
| From this deduct the difference in the amount paid by Arbuckle, reducing amount paid to gold value, and interest on difference to June 1, 1877. (See page of report No. 4). | $1,807 48 | |
| Balance due S. W. N. Feamster. . . | $5,904 31 | |
| Amount due S. W. N. Feamster as on preceding page. . . . . . . | $5,904 31 | |
| Should the payments made to the bank at Union after January 1, 1862, be held to have been in Confederate money, taking the difference, with interest from this amount —(see next page, Nos. 2 and 3). . | $3,435 24 | |
| Leaves. . . . . . . . | | $2,469 07 |

1878.
Special Term.

Feamster *et al.*
v.
Withrow'
trustee, *et al.*

The payment of $400.00 on the Kent, Payne & Co. debt, April 30, 1862, as per statement of Wm. H. Montgomery, was in Confederate money. Deduct the difference, with interest—(see next page, No. 3).     .     .     $217 17

$ 217 17

Leaves.     .     .     .     .     .     .     .          2,251 90

Now, if we deduct the difference in value of money on the balance paid on the $650.00 note in Lewisburg bank, with interest—(see next page, No. 5),     .     .     .     .     .     999 19

999 19

Leaves due S. W. N. Feamster.     .     .     .          1,252 71

Should it be held that S. W. N. Feamster should be charged with but $2,212.97 on price of slaves instead of $2,500.00, there will be the further sum of —— to be added.     267 03
Interest on same for fourteen years.     .     .     241 00

528 03

*Statement showing the value of Confederate money at the dates when payments were made by S. W. N. Feamster, and the amount of such payments on a gold basis, and difference, with interest.*

1st. $255.00 paid on debt in bank, at Union, January 24, 1862, (Confederate money, $1.25) $204.00; difference $51.00; interest to June 1, 1877, $46.97.     .     .     .     .     $  97 97

2d. $2,681.02 paid on same debt, December 18, 1862, (Confederate money, $3.00,) $893.67; difference, $1,787.35 ; interest, $1,549.92.     3,337 27

3,435 24

3d. $400.00 paid on Kent, Payne & Co. debt, April 30, 1862, (Confederate money $1.40) $286.00 ;  difference,  $114.00 ;  interest, $103.17.     .     .     .     .     .     .     .     217 17

217 17

4th. $1,197.44 paid M. Arbuckle on debt to bank, at Lewisburg, May 7, 1863, (Confederate money, $5.50) ; difference, $979.73 ; interest from May 7, 1863, to June 1, 1877, $827.75.     .     .     .     .     .     .     .     1,807 48

1,807 48

5th. $588.00 paid on note in bank, at Lewisburg, part of the $650.00 note mentioned, paid as of February 24, 1864, (Confederate money, 22.50) ; $difference, $561.87 ; interest to June 1, 1877, $437,32.     .     .     .     999 19

999 19

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

Statement showing account between S. L. Feamster and S. C. Ludington, taking as a basis the decree of 1872, and adding interest on the principal from November 25, 1871, to June 1, 1877, to the sum then found due, $2,122.37 principal, and $264.59 interest making: . . . . . $2,386 86

Interest on principal, $2,122.27, from November 25, 1871, to June 1, 1877. . . . 703 88 — $3,090 74

3,090 74

At request of counsel for Ludington, the following statement, showing amount due Ludington on 1st June, 1877, allowing him credit for what the bank notes and checks cost him, as per supplemental statement of Walker's report, principal due November 25, 1871, $2,531.70, and $356.31 interest. . . . . . . . 2,888 01

Interest on $2,531.70 principal from November 25, 1871 to June 1, 1877. . . . . 839 67 — 3,727 68

3,727 68

*The following is a statement of the Dickson debt, with interest calculated thereon down to June 1, 1877:*

Judgment of Wm. H. Dickson, Greenbrier county, against Thomas L. Feamster, S. C. Ludington, D. H. Stalnaker and C. A. Stuart, on delivery bond. . . . . $ 980 00

Interest from May 27, 1860 to June 1, 1877. 1,000 41

Costs. . . . . . . . . 3 83 — $1,983 24

1,983 24

This judgment has priority over the debts in the trust deed.

*The following is a statement of the Matthew Mann debt, use J. W. Vance.*

DR.

Principal debt. . . . . . $1,800 00

Interest from February 23, 1861 to July 27, 1870. . . . . . . . 1,018 03 — $2,818 03

CR.

By amount paid March 5, 1869. . . . 614 00
" interest on same July 27, 1870. . . 51 37
" amount paid July 27, 1870. . . . 500 00 — 1,165 37

1,652 66

Interest on $1,652.66 to June 1, 1877. . . 666 68

2,319 34

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

This statement is made from the judgment and not from commissioner Walker's report, as a mistake was discovered which made about $90.00 difference.

The following exceptions were filed to the foregoing report of the commissioner :

" So much of this report is excepted to as gives S. C. Ludington a larger amount than was allowed by the circuit court before. So much of the decree appealed from as made that allowance was affirmed May 31, 1877.

" S. PRICE,<br>
"<i>For Plaintiffs</i>."

<i>Exceptions.</i>

"1st. The plaintiff, S. W. N. Feamster, excepts to so much of the report of J. M. McWhorter, commissioner of the court, as in any form disallows to him the whole amount of the negotiable note on the Bank of Virginia, at Union, below the actual amount thereof, which was $3,500.00, which was paid by said Feamster, with the costs thereof, after being matured into a judgment.

" 2d. He also excepts to all of said report as allows to Wm. H. Dickson, or any other person, the amount or any part of the Dickson judgment against Thomas L. Feamster.

" 3d. He also excepts to the charge of $400.00 against him, on account of moneys paid to W. H. Montgomery as T. L. Feamster. (See S. W. N. Feamster's deposition).                                             "S. PRICE,
"June 9, 1877.                 " *For S. W. N. Feamster.*"

On the 23d day of June, 1877, the cause was again heard, &c., upon the report of commissioner J. W. McWhorter made pursuant to the decree entered at the October term, 1876, the exceptions to said report, and the court decreed as follows :

" Upon consideration whereof, the court is of opinion and decides that the statements of said report which ascertain the amounts due S. W. N. Feamster as $1,252.71,

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

Samuel C. Ludington as $3,090.94, J. W. Vance as $2,319.34, and the amount due in the judgment which was originally in favor of W. H. Dickson as $1,983.24, all as of June 1, 1877, are correct, and should be allowed; and it is therefore adjudged, ordered and decreed, that said amounts be allowed, the said statements of said report confirmed, and that all exceptions to said report inconsistent with this decree be overruled. And the court is further of opinion and decides that the said judgment of W. H. Dickson as to him has been satisfied, and that he is no longer entitled to the benefit thereof, but that the same now belongs to and is for the benefit of the defendants, James H. Renick and S. C. Beard; and it appearing that the said Renick and Beard hold the due bill of W. H. Dickson and G. A. Rader mentioned and filed in this suit, it is ordered that a payment of said Dickson judgment to them shall be a full satisfaction of said due bill. It is therefore further adjudged, ordered and decreed, that the said S. W. N. Feamster, S. C. Ludington, J. W. Vance, James H. Renick and S. C. Beard recover from Thomas L. Feamster the said sum of $1,252.71, $3,090.74, $2,319.34 and $1,983.24, respectively, with interest on each of said sums from the 1st day of June, 1877, until paid, and their respective costs in this suit expended. And it appearing further, that the said creditors, by virtue of the said judgment and the said trust deed in the bill and proceedings mentioned, have a lien upon the land by the deed conveyed, and that the lien of said judgment is paramount to the lien of the said deed, and is entitled to be first paid in preference to the other said debts, it is further adjudged, ordered and decreed, that the injunction in this cause be dissolved, and that A. C. Snyder, who is hereby appointed a special commissioner for the purpose, proceed at once to sell the said real estate in the manner and upon the terms prescribed in said deed, and report his proceedings under this decree to the next term of this court; and the said commissioner before receiving any money under this de-

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

cree shall give bond in the penalty of $10,000.00, with security to be approved by the clerk of this court, conditioned according to law; and upon the coming in and confirmation of the said report of sale, to be made as aforesaid, the said commissioner is directed out of the proceeds of said sale to pay first the expense of executing and recording said deed, if still unpaid, then pay the costs of the said S. W. N. Feamster, S. C. Ludington, J. W. Vance and James H. Renick and S. C. Beard, then pay the amount decreed to James H. Renick and S. C. Beard, and then pay ratably the amounts hereinbefore decreed to S. W. N. Feamster, S. C. Ludington and J. W. Vance, and retain the residue, if any, subject to the future order of the court; and when all the purchase money is paid, then W. C. Woodson, who is hereby appointed a special commissioner for the purpose, shall make to the grantee or grantees a deed or deeds in fee simple with special warranty of title for said lands, for which the grantee in each of said deeds shall pay him a fee of $5.00.

From this decree, the appellants have obtained from this Court an appeal, and also have obtained a *supersedeas* to so much thereof as appoints commissioners to sell the land, &c. In this way this case is again before this Court for review and determination.

The appellants insist that the court erred in not allowing the appellant, S. W. N. Feamster, the whole amount of the debt of $3,500.00, due the Bank of Virginia, at Union, Monroe county, by Thomas L. Feamster and others, and which it is claimed was paid off and discharged by S. W. N. Feamster, one of the securities of Thomas L. Feamster for said debt on the 19th day of January, 1861.

The paper referred to in the opinion of this Court, on page 320 of 9 W. Va., heretofore pronounced in this case, is now agreed to be genuine, and that M. McDaniel, who signed said paper, was at the date thereof, cashier of the bank at Union. This paper is a statement by the

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

cashier of the bank of the amount of the $3,500.00 debt due from Thomas L. Feamster, as principal, and S. W. N. Feamster and others as his securities, &c., and a receipt as above in full of execution.

It now appears by the record, that before said paper was executed by said cashier, the Bank of Virginia aforesaid, had obtained judgment against said principal and his securities for said debt, costs of protest and costs of suit. This fact seems to be indicated by said paper given by the cashier. It also now fully appears that S. W. N. Feamster, on the 19th day of January, 1861, after said judgment was rendered, paid to the cashier of the said bank $750.00, and delivered to said bank his negotiable promisory note, with security, payable at a future day, for the balance of said debt and interest up to that date, including $13.00 for costs of suit, which it seems was supposed to be the full amount of the costs, and the cashier of the bank, on said 19th day of January, 1861, executed his receipt to S. W. N. Feamster, acknowledging that he had received from him $3,652.82, "as above in full of execution in hands of sheriff of Greenbrier county, in favor of Bank of Virginia, at Union, against the said Thomas L. Feamster and others," being the same parties against whom said judgment was rendered in favor of said bank. (See said paper at page 320, 9 W. Va.) It also appears that said S. W. N. Feamster made some payments on the note made by him and his securities, to the bank, on the 19th day of January, 1862, and had the note renewed from time to time, until the 18th day of December, 1862, he paid the same; but it further appears that he paid the same or the greater part thereof, in greatly depreciated Confederate notes. The circuit court, in its decree has allowed S. W. N. Feamster the market value of the depreciated notes with which he paid and satisfied his said note to the bank. But S. W. N. Feamster claims that in this the court erred to his prejudice, and that the court ought to have allowed him the full amount of the debt due the bank

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

on the 19th day of January, 1871. The debt to the bank of Virginia is one of the debts mentioned in the deed of trust in the bill filed in this cause referred to. The substance of said deed of trust is stated in the former opinion of this court, at pages 298, 299, and 300, of 9 W. Va.; and among other things the deed of trust says : "to secure a debt of $3,500.00, due the Bank of Virginia, by negotiable note executed by Thomas L. Feamster and S. W. N. Feamster, (for the benefit of the former), and endorsed by J. M. Alderson, Samuel C. Ludington, D. H. Stalnaker, and Thomas Creigh, and to indemnify, secure and save harmless the said S. W. N. Feamster, J. M. Alderson, Ludington and Creigh, from any loss or liability which has accrued, or may accrue to them as securities or endorsers of this note." The negotiable note made by S. W. N. Feamster and his endorsers or securities, was made on the 19th day of January, 1861, a short time previous to the commencement of the late war between the government of the United States and the Confederate States. In the case of *Pool & Co.* v. *Rice,* 9 W. Va. 73, it was held by this Court "that a note will not be regarded as an absolute payment or extinguishment of a precedent debt, unless it be so expressly agreed, whether the note received was that of one previously bound, or of a stranger; and it will not be so regarded, even when so expressly received, if such agreement was procured by fraudulent concealments and misrepresentations." In the case of *Dunlap's ex'ors* v. *Shanklin, ex'or et al.* 10 W. Va. 662, it was also held by this Court "that taking a note from the debtor, or a note of a third party, is no discharge of the debt unless it is expressly agreed between the debtor and creditor that it is in absolute payment thereof." When this case was heretofore before this Court, it was held upon the evidence then in the record touching the subject, that the said note, given by said S. W. N. Feamster to the bank, on the 19th day of January, 1861, should not be. treated as payment and satisfaction of the balance due on the original

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

debt. At that time the judgment for the debt was not in the record, and was not sufficiently proven. The only evidence now in the record bearing on the question as to whether said note was, by agreement, received in satisfaction of the residue of the debt, is said paper or statement, and receipt of the cashier, and some extracts taken from the books of the bank, which are, by agreement, admitted to be correct as evidence, the same as proven by deposition, but subject to any exceptions which might be made to the depositions, and also the deposition of S. W. N. Feamster, in which he states that Madison McDaniel, the said cashier of said bank, has been dead some two or three years; that he was with said cashier on the 19th of January, 1861, in the bank at Union; that said cashier on that occasion executed the receipt marked "M. McD." and that that paper does present a true statement of a settlement he and said cashier had on that occasion. He was then asked by his counsel "was that a payment, or what was it on your part as far as Thomas Feamster's debt was concerned?" to which he answered, "I considered it a payment." The said cashier's evidence was never taken in the cause, who could have explained this whole matter with satisfaction, if his deposition had been taken before he died, and there seems to be no reason why it was not done; the cause was pending long prior to his death. The paper-writing or receipt is headed Statement. Bank of Virginia, Union, v. Thos. L. Feamster and S. W. N. Feamster, drawers, and J. M. Alderson, S. C. Ludington, D. H. Stalnaker and Thomas Creigh, endorsers.

| | | | |
|---|---|---:|---:|
| "Amount debt due May 26, 1861. | | $3,500 00 | |
| Notarial fees. | | 3 20 | |
| | | | $3,503 20 |
| Interest to 19th, January, 1861. | | $136 62 | |
| Costs of suit, including sheriff's costs ($3.00) | | 13 00 | |
| | | | $149 62 |
| | | | $3,652 82 |
| By cash of Newman Feamster. | | $ 750 00 | |
| By proceeds of his note due at 116 days $2,962.00, off $50.22, | | 2,902 82 | |
| | | | $3,652 82 |

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

"Received from S. W. N. Feamster, thirty-six hundred and fifty-two dollars and eighty-two cents, as above, in full of execution in hands of sheriff Greenbrier county, in favor of Bank of Virginia, at Union, against the above parties.      M. McDANIEL, *Cashier.*"

From extract (paper B), from the entries made on the books of the bank, it seems that on the 19th day of January, 1861, the cashier of the bank treated the said $3,500.00 as a suspended debt. The extract is as follows:

"Suspended debt, T. L. and S. W. N. Feamster, . . $3,500 00
Interest, T. L. & S. W. N. Feamster, . . . 136 62
L. E. Caperton, notary, costs, T. L. and S. W. N. Feamster, 3 20
Expense account, costs of suit, . . . . . 13 00"

This entry, according to the bank books, was made on the 19th day of January, 1861, and the items in the aggregate amount to the precise sum stated in said receipt. The question here arises, is the foregoing evidence, under the circumstances, sufficient to establish the fact that the said note of S. W. N. Feamster, executed to the said bank on the 19th day of January, 1861, was, by express agreement, received and accepted by the bank in satisfaction and discharge of the balance due on said debt or judgment, after deducting the money paid on that day. It has been held that where a creditor receives a negotiable note for an antecedent debt, and passes the note to a third person, the antecedent debt cannot be recovered unless the plaintiff shows the note to have been lost or produces and cancels it at the trial. In Massachusetts and Maine, when a debtor gives to his creditor a bill of exchange or negotiable note for a debt due on simple contract, the legal presumption is, that the bill or note was received in payment. The rule in these States certainly differs from that adopted in others, and in the Circuit and District Courts of the United States and the Supreme Court thereof. The Supreme Court of the United States considers it, " generally true that the giving a note for a pre-existing debt, does not discharge the original cause of action unless it is agreed that the

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

note shall be taken in payment. Such is the acknowledged rule in Maryland, Pennsylvania, North Carolina and Missouri. 5 vol. of Robinson's Practice 847 and 848, and the authorities there cited. Whether even such agreement will operate to discharge the original cause of action, when the new note taken is simply of the debtor himself, is a question on which judges in New York have not held a uniform language. Following. *Herring* v. *Sanger*, the Supreme Court of New York, in 1809, treat it as well settled that taking a note either of the debtor or a third person, for a pre-existing debt, is no payment unless it be expressly agreed to take the note as payment and to run the risk of its being paid, or unless the creditor parts with the note or is guilty of laches in not presenting it for payment in due time. The court said : "He is not obliged to sue upon it. He may return it when dishonored and resort to his original demand, it only postpones the time of the payment of the old debt until a default be made in the payment of the note.

In 1849, Allen, Judge, considered it as settled by the adjudications in New York, that the notes of the debtor of a third person will not be considered as any thing more than the conditional payment of an existing debt unless it is proved that they were agreed to be taken absolutely as payment of said debt. "According to these adjudications, taking the note of a *third person* for an existing debt is not payment, unless the creditor agrees to receive it as payment; and not even such agreement of the creditor is sufficient when the note received is of the *debtor* himself.

In 1841, Cowen, Judge, said : "It is entirely settled that a promisory note of the debtor in no way affects or impairs the original debt, unless it be paid. The creditor may, notwithstanding, recover on the original consideration, surrendering or cancelling the note at the trial. The note is a mere liquidation of the demand ; and it being the duty of the debtor thus to liquidate and secure the demand, nay, to do more, it follows that an accept-

1878.
Special Term.

Feamster *et al.*
v
Withrow,
trustee, *et al.*

ance, or even an express agreement to accept, in consideration of such a shortcoming, is a *nudum pactum.* This doctrine has been reiterated; but it certainly varies from that established in England. 5 Rob. Prac. 848, 849, and authorities there cited. There is a distinction in England between accepting an instrument in full satisfaction of a debt, and receiving it for or on account of a debt. Same volume and author, pages 850, 851, 852, 853, 854, 855, 856, 857, 858, 859, 860 and authorities there cited. In England, when the creditor has relied on the sole security of one partner, the other has been discharged.

The Supreme Court of the United States, (in 1810) considered that the note of one of the parties, or of a third person, may by agreement, be received in payment. Since then the subject has been much discussed; and cases have been frequently distinguished. 5 Rob. Prac. 861, and cases there cited in notes. The King's bench held that if the plaintiffs did expressly agree to take and did take, the separate bill of exchange of one of two partners in satisfaction of the joint debt, their so doing amounted to a discharge of the other. *Thompson* v. *Percival,* 5 Barn. & Adol. 934, 27 Eng. C. L.; 5 Rob. 863.

In Pennsylvania, in 1842, Huston, Judge, said " the result seems to be, that although a note given for a precedent debt, is not generally an extinguishment of such precedent debt, yet if agreed and accepted so to be, it shall be what it was agreed and accepted for." *Mason* v. *Wickersham,* 4 W. & S. 100 ; *Oliphant* v. *Church et al.,* 19 Penn. (7 Harris) 318.

"Whether or no the unperformed promise, oral or written of one of two already bound for the same debt by a like promise to the same party, can discharge or be pleaded or used in evidence to bar the legal remedy on the original promise, it may be safely affirmed, on principle and authority, that such discharge will not be effected, nor such bar be created, unless the parties making and accepting such new promise intended or stipulated that such discharge or bar to the former *assumpsit* should be

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

the consequence of the making and acceptance of the new several promise. When a man has the security of the firm and also the security of the separate estates of the individual members of the firm, it is not without some cogent evidence, to be assumed that he to whom the law has given this double advantage should relinquish a part of it. From what has been said in section 5, it will be understood, that taking a bill for and on account of a debt operates not as an absolute discharge of the debt, but only as a conditional payment which is defeated by the subsequent dishonor of the bill. Hence when the instrument given by one of two or more partners, is not accepted in full satisfaction and discharge of the former debt, but merely received for and on account of the debt, it is proper for the plea to show either that such instrument is not due. or is endorsed to a third person. It is so although there be judgment on the instrument; for judgment without satisfaction is no payment. 5 Rob. 864-5. In the case of *Glenn* v. *Smith,* 2 Gill & Johnson (Md.) 493, it was decided that "the acceptance by a creditor from his debtor of his promisory note, for an antecedent simple contract debt, does not extinguish the original debt, if it remains in the hands of the creditor unpaid, and he can produce it to be cancelled, or show it to be lost. But the creditor will not be suffered to recover on the original cause of action, unless he can show the note to have been lost, or produces it at the trial, to be cancelled. The acceptance by a creditor of a note or bill of a third person for a pre-existing debt, is no payment, or extinguishment of such debt, unless the creditor parts with it, or is guilty of laches in not presenting it for payment in due time. In either of the above cases, an express agreement by the creditor to receive the note or bill absolutely as payment, and to run the risk of its being paid, is an extinguishment of the previous debt, whether the note or bill be afterwards paid or not. Such agreements are not to be implied from the use of the words, "in payment of the above account" in a receipt for

82

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

the note. To give to the acceptance of a note the effect of an absolute payment or extinguishment of a debt, a contract that it should be so must be shown. The acceptance of a note by a creditor for a precedent debt, is a suspension of his right of action until the note reaches maturity."

In *Kearslake* v. *Morgan,* 5 Tenn. 513, it was conceded, "that a promisory note of a third person accepted and received by a creditor, for and on account of a debt due him," was not of itself an extinguishment of that debt. In *Puckford* v. *Maxwell,* 6 Tenn. 52, where the plaintiff had accepted a bill in part payment of his debt Judge Kenyon said, " if the bill which is given in payment, does not turn out to be productive, it is not that which it purports to be, and which the party receiving it expects it to be, and therefore we may consider it a nullity, and act as if no such bill has been given." There the fact of a note being given in payment was held not to be an extinguishment of the debt. The same principle has been followed out in the courts of New York. In *Tobey* v. *Barber,* 5 Johns. 68, there was a receipt by a landlord to his tenant, in these words : " Received of Ralph Barbour, $163.00, on account of the within lease, and in full for the second and third quarters rent." It turned out in evidence that the sum of $163.00, mentioned in the receipt, was made up in part of money paid by the defendant to the plaintiff, and in part of a note of a third person given to the plaintiff, and it was decided, that there was no evidence that the plaintiff agreed to run the risk of the solvency of the maker of the note, and to take the note in absolute payment, except by inference arising from the receipt which was not enough to establish such a positive agreement. There was receipt in full, purporting to be for cash, which might have afforded some ground for supposing that the plaintiff intended to treat the note as cash, and to put it on the same footing with the money received, which as far as it went, was a discharge of so much of the rent. In *Johnson* v.

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

*Wood et al.*, 9 Johns. 310, when the plaintiff having sold goods to the defendants, received the note of a third person for the amount, and gave the defendants a bill of the goods, with a receipt in full at the bottom, it was held that the terms of the receipt were not decisive, and it might be understood, consistently with the words of it, that the note was received in full, under the usual condition of its being a good note. And in *Putnam* v. *Lewis's adm'r*, 8 Johns. 389, where the plaintiff having a demand against the estate of the defendant's intestate, received the defendant's promisory note for the amount and gave him a receipt in these terms : " Received of George R. Lewis, $53.96, it being in full of all demands which I have against the estate of Eber Lewis, deceased," it was decided that the note was no payment of the debt. See opinion of Buchanan, C. J., 2 Gill & Johns. 510, 511, 512. In *Berry* v. *Griffin*, 10 Md. 27, it was held that " the receipt of a note ' in payment of the account ' is not satisfaction. or extinguishment of the original claim, unless there is evidence, in addition to the receipt in these terms, of an agreement that the creditor was to receive the note as payment and to run the risk of its being paid." *Crawford* v. *Berry*, 6 Gill & Johns. 71 ; *Yates* v. *Donaldson*, 5 Md. 296. But see *Whitlock* v. *Van Ness*, 11 Johns. 408.

In the case of *Steamboat Charlotte* v. *John R. Hammond*, 9 Mo., with Heuck's notes, top page 49, side page 60, it was held, " that neither a note nor a receipt in full, without a special agreement, will extinguish the original demand." In the case of *Witherby* v. *Mann & Mann*, 11 Johns. 516, it was held, that " when a negotiable note has been received, expressly in satisfaction of a judgment, it is an extinguishment of the judgment debt." But in this case it was proved by the judgment creditor, that " he had received from the plaintiff, his promisory note for $52.17, being the amount of that judgment, which note remained unpaid, and was received by him in full satisfaction of the judgment, and for which he

gave a receipt as for so much money, being the amount of the judgment." See *Cox* v. *Boen*, 8 W. Va. 500; *Miller* v. *Miller, Id.* 542; *Hoffman* v. *Walker*, 26 Gratt. 314; *Parker* v. *Cousins*, 2 Gratt. 372; *McGuinn* v. *Goolsby*, 3 Call 24; *Farmers' Bank* v. *Mutual Assurance Society*, 4 Leigh 88; *Bank of Alexandria* v. *Taylor's adm'r*, 5 Leigh 471. In the second volumn of Greenleaf on Evidence, section 517, it is said, "if a receipt was given for the money, it is proper and expedient to produce it, but it is not necessary, parol evidence of the payment being admissible, notwithstanding the written receipt, and without accounting for its absence. And if produced, it is not conclusive against the plaintiff, but may be disproved and contradicted by parol evidence." 2 Greenl., §305.

The receipt of the cashier in the case before us does not appear on its face or by its terms, to be a receipt for money, to the amount of $3,652.82; but it refers to the statement above it, and that statement must be taken as a part of the receipt; and taking them together, it is a receipt in part for money, and in part for said note executed to the bank on the day of the date of the receipt. The question here presents itself: Does the receipt of the cashier of the bank, taken in connection with the extract taken from the books of the bank, which appears to have been made on the books of the bank at the date of the receipt, which in express terms treats the debt as suspended only, and not as being paid and in connection with the evidence of S. W. N. Feamster, before referred to, in the absence of other evidence tending to prove that said note of S. W. N. Feamster and his securities, made to the bank at the date of said receipt, establish the fact that said note was, by express agreement, accepted and received by the bank in absolute satisfaction of said judgment debt, and the bank, to take upon itself the risk of the said note being paid, which it seems is the agreement necessary to be proved, to give the acceptance of the note the effect to extinguish the pre-existing debt, where the note has not passed from

*1878.*
*Special Term.*

*Feamster et al.*
*v.*
*Withrow,*
*trustee, et al.*

Syllabus 1

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

the hands of the bank subsequent to its acceptance? According to the authorities above cited, it is quite clear that under the evidence and facts and circumstances appearing, it cannot be considered that the note was accepted in absolute satisfaction and discharge of said judgment debt. The most that can be said under said authorities is, that the acceptance of said note operated an extension of time as to further proceedings upon the judgment for the collection thereof. This case in material aspects is not unlike the case of *Tobey* v. *Barber*, 5 Johns. 68, and of the Maryland cases before cited, except that the evidence of satisfaction in this case is not so strong as those. The *onus* of proving that the note was accepted by the bank in satisfaction of the judgment debt by express agreement, rested on S. W. N. Feamster in this case. If such were the fact, it was his duty to have satisfactorily proven the fact. And not only so, it is clear that if the note was received and accepted by the bank in satisfaction of the judgment debt it was in his power to prove it. He could have done so by taking the deposition of the cashier of the bank before he died, and moreover he could have proved it by his own deposition. But he has failed to do so. He has contented himself with the production of the statement and inconclusive receipt of the cashier aforesaid and his own simple statement in his deposition taken since the case was here before, that he " considered it a payment," to prove that said note was received in satisfaction of the pre-existing debt. If there was in fact an express agreement at the time the note was received by the cashier of the bank that it was accepted and received by the bank in satisfaction of the pre-existing debt, why did he not state the agreement or facts on his oath so that the court could judge as to the effect of the agreement or facts, and not simply state that he "considered it a payment;" thereby making himself both witness and judge as to the effect of the facts and transaction without stating what they were.

1878;
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

Syllabus 3

The receipt of the cashier does not expressly state that said note was received in *full satisfaction or extinguishment* of said pre-existing debt. This is not a case between the bank and the parties to said judgment debt, but is in fact a case between S. W. N. Feamster and Thomas L. Feamster, the principal debtor and his other trust creditors, &c., in which said S. W. N. Feamster is professing to seek indemnity and reimbursement for loss sustained by him as the surety of said Thomas L. Feamster, and without expressing an opinion as to whether I am willing to adopt the principles decided in the said Maryland and New York cases hereinbefore cited to their fullest extent and meaning, still I think they are substantially correct when applied to principal and surety in cases where the surety is seeking indemnity or reimbursement from his principal for loss incurred as such surety. Here the debt of the bank was a judgment debt with all its liens, and it seems to me that as it is claimed by S. W. N. Feamster, that the judgment debt was satisfied and discharged by the acceptance of the said negotiable note by the bank, it ought not to be held by this Court in a case like this that the note was so accepted and received by the bank, except upon clear proof of the fact, especially where the court sees from the facts and evidence in the cause, that the security is seeking indemnity and reimbursement to a large exent for *pretended* losses, which he never sustained. It is true that a surety may, at any time, voluntarily pay the debt after it is due; and he is at once entitled to his action, but such payment must amount to a satisfaction of the original debt and a release and discharge of the principal debtor therefrom. *Cloveinger et al.* v. *Miller,* 27 Gratt. 740 and 743. But I think upon principle and the authorities upon the subject, that when it appears that the payment claimed to have been of a judgment debt made by the surety was in a negotiable note and not money, or its equivalent, the surety, if his action is brought before the debt has been actually paid in money

or its equivalent, such as personal or real property, cannot recover against his principal in an action at law for money paid by him as his security, unless he clearly proves that his said negotiable note was accepted and received by the creditor by express agreement in absolute and complete satisfaction and discharge of the pre-existing debt, and of the principal debtor therefrom. (See 2d ed. of Segwick on the Measure of Damages, 319, 320). *Witherby* v. *Mann & Mann*, 11 Johns. top page, 516, side page 518. See the case of *Maxwell* v. *Jamison*, 2 Barnwell & Alderson 51. This last cited case decides in effect that a surety shall only recover at law against his principal for actual loss. See on this subject *Kendrick et al.* v. *Forney*, opinion of Anderson Judge, 22 Gratt. 749, 750, 751, 752, 753, 754. But S. W. N. Feamster did not seek a recovery at law after he gave said negotiable note to the bank, but has come, in the first instance into a court of equity, to ask and obtain indemnity and reimbursement for loss and damage sustained by him by reason of his said suretyship, out of the trust property. A court of equity looks more to substance than mere form, and will generally allow the surety as against his principal, what is his just and legal right, but will not permit the surety to speculate off his principal when in the proper exercise of its jurisdiction it can prevent it. Upon the whole, I am of opinion that under the evidence and facts appearing in this cause, and the authorities, it does not sufficiently appear that the said negotiable note of S. W. N. Feamster was, by express agreement, accepted and received by the bank as an absolute payment or extinguishment of the said pre-existing judgment debt. And that in fact it cannot be considered in this case, that said judgment debt was fully satisfied until the 18th day of December, 1862, when the same was actually paid by S. W. N. Feamster. Under the foregoing view of the case as to the point under consideration, there is no error in the decree of the said circuit court of 23d of June, 1877, in so far

1878.
Special Term.
―――――
Feamster *et al.*
v.
Withrow,
trustee, *et al.*

Syllabus 4

Syllabus 5

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

as it ascertains the amount due to said S. W. N. Feamster, to be the sum of $1,252.71 that being the amount justly due him from Thomas L. Feamster, secured by said deed of trust after allowing him the value of the depreciated currency or Confederate notes, with which he paid debts of his principal.

I will remark here that I do not see in the record before us a copy of the execution which it is claimed by the appellee was issued on the judgment of the bank, or the return of the sheriff of Greenbrier county made thereon, although the counsel for appellants refer to said execution as being on page 57 of the record. I infer however if an execution ever did issue on the judgment that it was never returned to the clerk's office. It no where appears that the execution, if ever issued, was levied on any property of the judgment debtors. I simply mention these facts without further comment. The appellants further claim that the circuit court erred in ascertaining that the amount due on the judgment which was originally in favor of W. H. D. Dickson, was or is $1,883.24, as of June 1, 1877, and in decreeing that the same now belongs to and is for the benefit of defendants, James Renick and S. C. Beard, and in decreeing that said Renick and Beard recover the same against Thomas L. Feamster, with interest thereon, from the 1st day of June 1877, till paid, and their costs about this suit expended, &c., and that the same constituted a lien on the lands in the deed of trust in the bill and proceedings mentioned. Since this cause was formerly before this Court, material additional evidence has been taken and filed in the cause before the commissioner. This evidence is in the shape of depositions taken and papers filed in the cause before the commissioner. When the cause was here before, I thought that the evidence, then in the record, was not sufficient to authorize me to determine and declare that said Dickson judgment was paid and satisfied, but without analyzing the evidence bearing on the subject, my conclusion now is after

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

re-examining the evidence in the record, when the case was heretofore before us and the additional evidence now in the record, which we are at liberty to consider in connection with all the facts and circumstances now appearing in the whole record bearing upon the subject, that it must be considered that the said Dickson judgment, and the lien thereof, was paid and satisfied before the death of sheriff Beard, and that the said circuit court did err in its said decree, in so far as it relates to the said Dickson judgment in every particular, and that the appellants' said objection taken to said decree touching said Dickson debt, in every particular, is well taken, and must be maintained by us.

As before stated, I deem it unnecessary to analyze the evidence, facts and circumstances appearing in the cause, from which my conclusions are drawn. That would extend this opinion to an unnecessary length. I feel authorized to content myself with stating the law relevant to and bearing upon the case, and my conclusions thereupon. I am satisfied that said Dickson received the full benefit of the amount of his said judgment from John Snyder, and that said Snyder afterwards received full satisfaction and payment of the same from Andrew Beard, who was sheriff of said county of Greenbrier, and who, on the 3d day of December, 1860, as such sheriff, received an execution against the goods and chattels of Thomas L. Feamster, issued upon the Dickson judgment, and upon which he never made any return. I am further satisfied that said sheriff during his lifetime, and after he had received said execution last named, and after the return day thereof, and after his term of office as sheriff had expired, paid to or settled with the said John Snyder, the full amount of said Dickson judgment, which said Snyder had paid to said Dickson. But it does not appear that said sheriff paid said amount of said judgment to said Snyder at the request of the judgment debtor, Thomas L. Feamster, who was the principal debtor in said judgment,

1878.
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

and it does not appear that said judgment was ever assigned by Dickson to Snyder, or by Snyder to Dickson, or by Dickson to said sheriff. And further, from the evidence, facts and circumstances in the cause, the fair presumption is, that said Andrew Beard received from Thomas L. Feamster, or the proceeds of his property, the money with which he paid said Snyder the amount of said judgment.

In the case of *Sanford* v. *McLean*, 3 Paige 117, it was held, that "it is only those cases where the person advancing money to pay the debt of a third party, stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity, as a matter of course, and without any agreement to that effect, substitutes him in place of the creditor. In other cases, the debt of a creditor, which is paid with the money of a third person, without any agreement that the security shall be assigned or kept in fact for the benefit of such third person, is absolutely extinguished."

In the case of *Janney's ex'or* v. *Stephens's adm'r*, 2 Patton Jr. & Heath (Va.) 11, it was held: " 1. The voluntary payment of a debt by judgment, constituting a lien on land, does not entitle the party paying it, to be substituted to the lien of the judgment creditor; the benefit of the doctrine of subrogation being extended by courts of equity only to those who are bound by law to pay debts or liens as sureties or otherwise, or are compelled to pay to protect their own rights. 2. When a person has paid off several executions against another, for some of which he was bound as surety, and for others not bound at all, and when he has received personal property of the debtor, sufficient to satisfy them in part, the oldest judgments will be presumed to be satisfied out of the proceeds of the judgment debtor's property, as they constitute a prior lien on the same."

In the case of *Clevinger* v. *Miller*, 27 Gratt. 740, it was held according to the syllabus that: "A sheriff or other officer, who pays an execution in his hands for col-

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

lection, without an assignment at the time, of the judgment on which it is founded, or the debt, is not entitled to be subrogated to the lien of the creditor whose debt he has paid, as against other creditors having liens by judgment or otherwise." See statement of the cases. I am not prepared at this time to decide that a sheriff in whose hands an execution is placed, to be levied on goods and chattels of the debtor, stands in the relation of surety to the delinquent debtor, it is probable that principle as well as public policy may forbid such a conclusion, but as under the view I take of the case, the question does not fairly arise, I do not now pretend to give an opinion on the subject. Judge Staples in his opinion in the case in 27 Gratt., at pages 745 and 746, says : " It will be perceived that the Supreme Court of New York, denied to the sheriff, the right of subrogation as against creditors and purchasers, although he had obtained an assignment of the judgment. Without controverting the justice of this discussion in the particular case, it would seem very clear that the sheriff by obtaining from the creditor an assignment of his judgment, would necessarily be entitled as assignee, to all his liens and priorities. The sheriff has the same right to purchase the debt that others have ; and such purchase necessarily carries with it all the remedies for its enforcement to which the assignor was entitled. When therefore the officer becomes assignee of the judgment, and makes a true and perfect return of the execution, he is entitled to the lien, and no injustice is done to creditors or purchasers. The learned counsel for the appellee concedes, that where the sheriff is compelled to satisfy the debt in consequence of his own default in levying and selling, he cannot maintain an action for the recovery of the money ; nor is he entitled to a right of subrogation. He insists, however, that in this case there was no such default, because the debtor owned no personal property, out of which the executions could have been made. If such was the fact, if the debtor had no

Syllabus 6

1877
Special Term.

Feamster et al.
v.
Withrow,
trustee, et al.

effects upon which a levy could be made, it was the officer's duty to return the executions. He was certainly under no obligations to pay them. It is incredible that a sheriff under such circumstances, would voluntarily assume the payment of debts to the amount of $1,000.00 or more, for which he was in no manner liable. The just inference is that he made the payment because he well knew he had by his default became responsible to the creditors." In this cause since the case was formerly before this Court, the deposition of A. F. Mathews has been taken and filed in the cause, which is as follows:

"First question, by S. W. N. Feamster.—Did you, during the life of Andrew Beard, have any conversation or conversations with him in reference to the Dickson debt involved in this suit? If you had, state under what circumstances they were held, and what was the purport of them. State fully all you recollect.

"Answer.—Soon after this suit was instituted, when I represented but before I owned the Ludington debt, I had been looking into the deed of trust, and found the Dickson debt mentioned. I made a further examination, and found there was a judgment for this debt older than said deed. I was anxious and interested to know what amount of debts still unpaid were in the deed or ahead of it, and as I saw that an execution on said judgment had gone into the hands of the sheriff, who was then Andrew Beard, I went to him to learn whether the Dickson debt had been paid. He told me in substance that he knew and recollected nothing whatever about it; did not know he had ever heard of it. I then asked him to examine his papers, to see what they showed on the subject, and report to me the result. He said he would do so. The next time I saw him, some ten days or two weeks afterwards, he said he had examined his papers, could find nothing but the execution in favor of Dickson against Feamster; that there was no return nor memorandum on it, and that he knew nothing whatever

1878.
Special Term.

Foamster *et al.*
Withrow,
v.
trustee, *et al.*

about it. He made no pretension to having ever paid it, and certainly made no claim to it. Further, Andrew Beard was present when the depositions of J. G. Rader and John Snyder, and perhaps others, were taken in the cause, by commissioner Alexander Walker, heard their testimony, and he then made no claim to the Dickson debt.

"2d Question, by same.—Were you acquainted with the pecuniary circumstances of Andrew Beard? If you were, state whether they were such that he would have forgotten such a debt as the Dickson debt if he had been entitled to it. State what his circumstances were.

"Answer—I can only say that all of his property was sold under legal process for payment of his debts, and the proceeds failed by a large amount to pay his indebtedness.

*Examined by Counsel for Renick and Others.*

"1st Question.—Who is now the owner of the debt claimed by W. H. Dickson—that is, to whom will the claim be paid if Dickson's pretension is sustained?

"The witness declines to answer this question, because he knows nothing about the subject of the question except what he knows by communications from Dickson to him as attorney and this he claims is privileged. I have no interest in it except to the extent of my fee."

These conversations of Andrew Beard were long after he should have paid or settled with said Snyder the amount of said Dickson judgment and it is singular indeed, if he had paid said judgment out of his own funds, that it should have escaped his memory. These facts and circumstances unexplained are wholy irreconcilable with the pretension now set up in this cause at this late day, that Andrew Beard had paid said Dickson judgment and advanced the money to pay the same for the judgment debtor. Again it does not appear that the said due bill of Dickson and Rader to Snyder was found among

the papers of Andrew Beard after his death. So far as the record here shows the first that was seen or heard of said due bill after the death of said Andrew Beard was at the taking of said first deposition of said Snyder which is contained in said former printed record, and then it was in possession of Dickson's counsel and was by him presented to said Snyder on his cross-examination and it is made a part of his deposition. It is but reasonable to infer under the circumstances unexplained that if Andrew Beard had had "any just claim to said due bill placed in his hands by Snyder or supposed he had to said judgment, he would have remembered the fact when he conversed with Mathews, especially after he had examined his papers with reference to the subject. Snyder in his deposition in last printed record, at page 26 says that it is his impression that the said debt (meaning the Dickson debt) was settled so far as he is concerned, and he sets up no claim to it. There are other portions of the evidence and circumstances to which I might refer touching this subject, but I deem it unnecessary. It appears by the record of this court that the appellees, Dickson and Ludington, by their counsel, have filed two cross assignments of error to the said decree of said circuit court, the first of which is as follows: "The court erred in allowing to Samuel C. Ludington only $3,090.74, or the so called market value of the bank money and checks used by him in paying the debts of his principal, Thomas L. Feamster instead of $3,727.68, as of June 1, 1877. This error is predicated on the deposition of said Ludington, taken and filed in the cause since the same was heretofore before this court. The evidence of said Ludington was taken and filed in the cause before the first appeal on this subject, and I do not see that his last deposition so materially changes the case from what it was before as to authorize a different conclusion as to his rights in the premises from that heretofore arrived at by this Court, if it were proper to now make and consider said deposition. But it is manifest

1878
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

from the opinion heretofore delivered in this cause, and the decree of this court then entered in the cause that it was not the purpose or intention of this court that any questions as to claims then before it, should be left open to further inquiry before a commissioner, except touching the said $3,500.00 debt and the payment of it, and as to the said Dickson'debt. Said assignment of error of said Ludington's counsel is therefore not well taken and is overruled. The second assignment of error (which is on behalf of said Dickson by his counsel) is as follows: "The court erred in deciding that the judgment of W. H. Dickson, as to him has been satisfied and that he is no longer entitled to the benefit thereof, but that the same now belongs to and is for the benefit of the defendants, James H. Renick and S. C. Beard." I have hereinbefore, for reasons stated, in effect overruled this assignment of error, so far as Dickson is concerned, and determined that said Renick and Beard are not entitled to said judgment or the benefit thereof. It is admitted here that there is an error of $51.37 to the prejudice of the Mann debt; that the error is the interest allowed by the commissioner on a payment; that the payment which was $614.00 did not extinguish the interest which had accrued at the time, and he allowed interest on the payment until the next payment was made; that this was usury, and is apparent on the face of the record. This error must be corrected by increasing the said Mann debt by the amount of said $51.37. For the foregoing reasons there is error in the said decree of the circuit court of the said county of Greenbrier, rendered in this cause on the 22d day of June, 1877, and the same must therefore be reversed, set aside and annulled, with costs to the appellants against th appellees, Renick and Beard, and such decree rendered by this court in this cause as the said circuit court should have rendered therein.

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

*Substance of the Decree to be entered that the Court below ought to have rendered, viz :*

And this Court proceeding to render such decree in the cause as the said circuit court of the county of Greenbrier ought to have rendered, it is adjudged, ordered and decreed, that the statements of the report of commissioner J. M. McWhorter, which ascertain the amount due S. W. N. Feamster as $1,252.71, and Samuel C. Ludington $3,090.94, as of the 1st day of June, 1877, are unpaid. And that the statement of said commissioner which ascertains the amount due J. W. Vance as $2,319.34, as of the said 1st day of June, 1877, is incorrect on its face in this, that there is an error therein in a matter of interest to the amount of $51.37, which should be corrected by adding the said sum of $51.37 to the said sum of $2,319.34, which in the aggregate amounts to the sum of $2,370.71, as of the 1st day of June, 1877. It is further adjudged, ordered and decreed, that all exceptions filed to said report of commissioner McWhorter, inconsistent with this decree, be overruled. It is further adjudged, ordered and decreed, that Thomas L. Feamster do pay to S. W. N. Feamster, the sum of $1,252.71, with interest thereon from the 1st day of June, 1877, till paid; and to S. C. Ludington the sum of $3,090.74, with a like interest; and to J. W. Vance the sum of $2,370.71, with a like interest, together with their costs respectively, about this cause in the circuit court of the county of Greenbrier expended. And it is further adjudged, ordered and decreed, that each of said last named debts, with interest as aforesaid, constitutes a lien of equal priority upon the lands in the deed of trust in the bill and proceedings in this cause mentioned, by virtue of said deed of trust. It is therefore further adjudged, ordered and decreed, that unless the said debts, with interest as aforesaid, are respectively paid within eighty days from the date of this decree, together with the costs aforesaid, A. C. Snyder, who is hereby appointed a special

1878.
Special Term.
_____
Feamster et al.
v.
Withrow,
trustee, et al.

commissioner for that purpose, do sell at public auction to the highest bidder, the lands in the deed of trust in the bill in this cause mentioned, or so mnch thereof as may be necessary for the purpose, before the front door of the court house of said county of Greenbrier, on some court day, requiring the purchaser to pay down in hand a sufficient amount of the purchase money to pay to said S. W. N. Feamster, S. C. Ludington and J. W. Vance, their costs aforesaid respectively, including the costs of said sale, including one-half said special commissioner's commission ; and that for the residue of the purchase money upon a credit of six, twelve and eighteen months, with interest from day of sale, taking bond with good personal security from the purchaser and retaining a lien on the land sold to secure the payment of the purchase money. But said special commissioner, Snyder, shall not make said sale until he shall first have given at least four weeks previous notice of the time, place and terms of the sale by advertisement published in some newspaper published in the said county of Greenbrier, for at least four consecutive weeks, and by like advertisement for a like period, posted at the court house door of said county, and at two or more public places near the said lands. Said special commissioner Snyder, shall not receive any money under any provision of this decree until he shall first have given bond with good personal security before the clerk ot said circuit court to be approved by said clerk in the penalty of $1,200.00, conditioned substantially that he will faithfully account for and pay over any money he may receive uuder this decree as the circuit court of the said county of Greenbrier may heieafter order or direct ; and the said special commissioner is ordered to report his proceedings to the said circuit court of the county of Greenbrier at a future term thereof, when such other and further proceedings will be had in this cause before said circuit court as are in accordance with the principles, rules and practice of courts of equity. And it is further adjudged, ordered and decreed,

1878.
Special Term.

Feamster *et al.*
v.
Withrow,
trustee, *et al.*

that the petition of James H. Renick and S. C. Beard, heretofore filed in this cause be dismissed. And this cause is remanded to the circuit court of said county of Greenbrier, for such further proceedings to be had therein as are in accordance with the principles, practice and rules of courts of equity.

The other Judges concurred.

CAUSE REMANDED.